[No. A135094. First Dist., Div. Three. July 11, 2013.]

LATINOS UNIDOS DEL VALLE DE NAPA Y SOLANO et al., Plaintiffs and Appellants, v.
COUNTY OF NAPA, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I. and III. of the Discussion.

## COUNSEL

Relman, Dane & Colfax, Reed N. Colfax, D. Scott Chang; David Grabill; California Rural Legal Assistance, Ilene J. Jacobs; California Affordable Housing Law Project of the Public Interest Law Project, Craig Castellanet, Michael Rawson; California Rural Legal Assistance and Jeffrey Hoffman for Plaintiffs and Appellants.

Richard A. Marcantonio and Samuel P. Tepperman-Gelfant for Public Advocates Inc., as Amicus Curiae on behalf of Plaintiffs and Appellants.

Goldfarb & Lipman, Juliet E. Cox, Barbara E. Kautz; Minh C. Tran, County Counsel, and Silva Darbinian, Chief Deputy County Counsel, for Defendant and Respondent.

Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

POLLAK, Acting P. J.—Latinos Unidos Del Valle de Napa y Solano (Latinos Unidos)[1] and individual plaintiffs Hector Olvera, Antonio Manzo, and Gabriel Deharo appeal from a judgment entered in favor of defendant County of Napa (the county) on their petition for a writ of mandate. Plaintiffs contend that the court erred in rejecting their contentions that (1) the county's 2009 housing element does not substantially comply with the state housing element law (Gov. Code,[2] § 65580 et seq.); (2) the county's density bonus ordinance conflicts with the state density bonus law (§ 65915); and (3) the county's zoning ordinances discriminate against affordable housing and lower income persons in violation of section 65008 and against Latinos and people with disabilities in violation of the federal Fair Housing Act (42 U.S.C. § 3601 et seq.), the California Fair Employment and Housing Act (§ 12900 et seq.) and section 65008. Although we agree with the trial court's conclusions in most respects, in the published portion of this opinion we conclude that the county's density bonus ordinance unlawfully conflicts with the state density bonus law. Accordingly, we shall reverse the judgment in that one respect and remand the matter with appropriate instructions.

### PROCEDURAL HISTORY

Latinos Unidos commenced this action in November 2009. In July 2010, Latinos Unidos along with the individual plaintiffs filed a second amended petition for writ of mandate and complaint for declaratory and injunctive relief. Plaintiffs allege that the county's zoning scheme discriminates against low-income and very-low-income persons in violation of section 65008; that the zoning scheme violates the federal Fair Housing Act, the California Fair Employment and Housing Act and section 65008 in that it discourages and interferes with the development of affordable housing, which has a disparate impact on Latinos and people with disabilities; that the county's housing element fails to comply with California's housing element law; and that the county's density bonus ordinance conflicts with the state density bonus law.

---

[1] Latinos Unidos is a nonprofit public benefit corporation that advocates for "non-discriminatory development policies . . . that address the needs of all economic segments of the population" in Napa County.

[2] All statutory references are to the Government Code unless otherwise noted.

In May and June of 2011, the trial court conducted a hearing on plaintiffs' challenges to the county's housing element, after which the court issued an order holding that the housing element "substantially complied" with state law. The trial court then conducted a multiday hearing on plaintiffs' remaining claims and on February 1, 2012, issued a statement of decision finding in favor of the county on all other claims. Plaintiffs filed ·a timely notice of appeal.

### DISCUSSION

## I. The County's Housing Element*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. Density Bonus Law

██ In 1979, the Legislature enacted the density bonus law, section 65915, which aims to address the shortage of affordable housing in California. (*Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 823 [65 Cal.Rptr.3d 251].) "Although application of the statute can be complicated, its aim is fairly simple: When a developer agrees to construct a certain percentage of the units in a housing development for low- or very-low-income households, or to construct a senior citizen housing development, the city or county must grant the developer one or more itemized concessions and a 'density bonus,' which allows the developer to increase the density of the development by a certain percentage above the maximum allowable limit under local zoning law. [Citation.] In other words, the Density Bonus Law 'reward[s] a developer who agrees to build a certain percentage of low-income housing with the opportunity to build more residences than would otherwise be permitted by the applicable local regulations.' " (*Id.* at p. 824, citing § 65915, subds. (a), (b).) To ensure compliance with section 65915, local governments are required to adopt an ordinance establishing procedures for implementing the directives of the statute. (§ 65915, subd. (a).)[16]

---

*See footnote, *ante*, page 1160.

[16] Section 65915 provides in relevant part: "(a) When an applicant seeks a density bonus for a housing development within, or for the donation of land for housing within, the jurisdiction of a city, county, or city and county, that local government shall provide the applicant with incentives or concessions for the production of housing units and child care facilities as prescribed in this section. All cities, counties, or cities and counties shall adopt an ordinance that specifies how compliance with this section will be implemented. . . . [¶] (b) [¶] (1) A city, county, or city and county shall grant one density bonus, the amount of which shall be as specified in subdivision (f), and incentives or concessions, as described in subdivision (d), when an applicant for a housing development seeks and agrees to construct a housing

In 2010, the county amended its ordinance implementing the state density bonus law. (Napa County Mun. Code, § 18.107.150.) The county's new density bonus ordinance provides in relevant part: "This section describes those density bonuses provided pursuant to Chapter 4.3 (commencing with Section 65915) of Division 1 of Title 7 of the Government Code. These density bonuses shall be provided, at the request of an applicant, when that applicant provides target units in addition to the affordable units required by Section 18.107.080 and otherwise complies with the requirements of this chapter." (*Ibid.*) Section 18.107.080, which was enacted at the same time, added an "inclusionary requirement" which requires up to 20 percent of new dwelling units in a residential development project be made available at prices affordable to moderate-income households. (Napa County Mun. Code, § 18.107.080, subd. (A).) Section 18.107.080, subdivision (D) of the Napa County code reiterates that "units that qualify a project for a density bonus pursuant to Government Code Section 65915 and Section 18.107.150 must be provided in addition to the affordable units required by this section and do not meet the affordable housing requirements contained in this section."

Soon after its adoption, plaintiffs amended their complaint in this action to include a cause of action alleging that the county's amended density bonus ordinance conflicts with the state density bonus law. Plaintiffs allege that the county ordinance impermissibly requires the developer to include a higher percentage of affordable units than section 65915 requires in order to obtain a density bonus.[17] The ordinance does so by excluding from the target units

development, excluding any units permitted by the density bonus awarded pursuant to this section, that will contain at least any one of the following: [¶] (A) Ten percent of the total units of a housing development for lower income households, as defined in Section 50079.5 of the Health and Safety Code. [¶] (B) Five percent of the total units of a housing development for very low income households, as defined in Section 50105 of the Health and Safety Code. [¶] . . . [¶] (D) Ten percent of the total dwelling units in a common interest development as defined in Section 1351 of the Civil Code for persons and families of moderate income, as defined in Section 50093 of the Health and Safety Code, provided that all units in the development are offered to the public for purchase."

[17] Plaintiffs also argue that the county ordinance impermissibly (1) requires long-term affordability covenants on moderate-income units; (2) requires a developer to build at a higher density than allowed by the zoning code in order to qualify for incentives; and (3) restricts concessions and incentives and requires unduly burdensome documentation to receive a density bonus. The trial court refused to consider these arguments, finding that plaintiffs had failed to exhaust their administrative remedies with respect to them, as required by section 65009, subdivision (b)(1), which provides that except in limited inapplicable exceptions, "[i]n an action or proceeding to attack, review, set aside, void, or annul a finding, determination, or decision of a public agency made pursuant to this title at a properly noticed public hearing, the issues raised shall be limited to those raised in the public hearing or in written correspondence delivered to the public agency prior to, or at, the public hearing . . . ." We agree with the trial court. On appeal, plaintiffs have not identified any specific reference in the documents submitted to the board in which they raised these issues. Rather, they claim that they submitted a letter to the board which "[i]n addition to raising specific concerns regarding the issue

necessary to qualify for the density bonus those units necessary to satisfy the county's inclusionary requirement. "For example, while under state law, density bonuses, concessions and incentives must be allowed where a developer agrees to restrict 10% of the project's units to lower-income households, under the county's ordinance, a developer only qualifies when it has restricted at least 22% of a projects units to lower-income households." Plaintiffs contend the county's ordinance places a greater burden on developers than is permissible under state law. We agree.

■ In *Friends of Lagoon Valley v. City of Vacaville, supra,* 154 Cal.App.4th at page 823, this court considered essentially the opposite situation, holding that the City of Vacaville could in its discretion award a greater density bonus than the bonus required by section 65915. We explained, "Although the calculations described are complicated, in our view the language of Section 65915 is clear and unambiguous. If a developer agrees to dedicate a certain percentage of the overall units in a development to affordable or senior housing, the Density Bonus Law requires the municipality to grant the developer a density bonus of at least a certain percentage, ranging from a low of 5 percent (for moderate income housing) or 20 percent (for senior and all other affordable housing) to a maximum of 35 percent, depending on the number of affordable housing units provided over the minimum number necessary to qualify for a bonus. [Citation.] Because the statute imposes a mandatory duty on local governments, and provides a means for developers to enforce this duty through civil proceedings [citation], it is clear that 35 percent represents the maximum amount of bonus a city is required to provide, not the maximum amount a developer can ever obtain. The entire aim of Section 65915 is to provide incentives to developers to construct housing for seniors and low income families. [Citation.] It would undermine this policy to interpret subdivision (g) as imposing an absolute cap, since such a rule would prevent developers from negotiating to obtain a higher density bonus in exchange for including even more low income or senior housing than is provided for in Section 65915." (154 Cal.App.4th at pp. 825–826, italics omitted.) This court also rejected the argument that "a municipality must enact an ordinance any time it wishes to provide more of a

---

involving the inclusionary units, . . . states that it is 'important that whatever ordinance the county adopts be fully consistent with [§] 615915.' [Citation.] The letter attached an article describing the requirements of § 65915. [Citation.] In addition, a sample density bonus ordinance from another jurisdiction was included as a model for the language that should be incorporated in the Napa County Ordinance." More was required to advise the county that plaintiffs contend the draft ordinance impermissibly imposed the additional restrictions and requirements now challenged. Accordingly, we consider only plaintiffs' argument that the ordinance conflicts with state law by requiring a higher percentage of affordable units for a density bonus than required by section 65915.

density bonus than is required by state law." (*Id.* at p. 826.) We explained that "setting up an additional hurdle for municipalities to clear (i.e., passing an ordinance) under these circumstances would be contrary to the spirit of the Density Bonus Law, which is designed to encourage, even require, incentives to developers that constinct affordable housing." (*Ibid.*) Accordingly, this court has recognized that section 65915 imposes a clear and unambiguous mandatory duty on municipalities to award a density bonus when a developer agrees to dedicate a certain percentage of the overall units in a development to affordable housing. (154 Cal.App.4th at p. 826.)

The county's attempt to distinguish *Friends of Lagoon Valley v. City of Vacaville* is not persuasive. The county argues that although it may be clear that the statute imposes no cap on how much of a density bonus may be granted by a local entity, there is an ambiguity as to whether the local authority may increase the percentage of affordable housing units necessary to qualify for a density bonus. The county argues that the words "seeks and agrees" in section 65915, subdivision (b) imply that the county has discretion to set the minimum requirements for a density bonus. The key sentence on which this argument is based reads: "A city, county, or city and county shall grant one density bonus . . . and incentives or concessions . . . when an applicant for a housing development *seeks and agrees* to construct a housing development . . ." with certain percentages of affordable housing. (§ 65915, subd. (b), italics added.) The county argues, "The definitions of both 'seek' and 'agree' connote action that is discretionary and volitional, rather than mandatory, and support the county's requirement that a developer go above and beyond the minimum to receive any density bonus." To resolve this purported ambiguity, the county suggests we consider the legislative history of recent amendments of the statute.

■ Before resorting to legislative history, however, there must in fact be an ambiguity in the words of the statute. (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265 [139 Cal.Rptr.3d 837, 274 P.3d 456].) ■ While the language "seeks and agrees to construct" does indeed include a volitional aspect, " 'affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context' " (*ibid.*), that language plainly refers to the voluntary nature of the developer's decision to seek permission and agree to proceed with a project dedicating a portion of the development to affordable housing. There is no implication in this language that the developer must seek and agree to do more than required by local ordinances, including any inclusionary requirement for affordable housing. Indeed, allowing the county to increase the minimum number of affordable units required

for a density bonus would conflict with subdivision (f) of section 65915, which bases the amount of density bonus on the percentage of affordable housing units in the project. (§ 65915, subd. (f).)

Were there any ambiguity, the legislative history provides little help in clarifying it. Although the legislative history does indicate that some legislators sought to impress the county's interpretation into the statute, others disagreed. The exchange within the Legislature is at best inconclusive. As explained in the trial court's discussion of the legislative history, "When Government Code section 65915 was amended in 2005, the original bill was initially amended to delete the phrase 'seeks and agrees to construct.' Ultimately, however, the language was reinserted into the bill and included in the statute as amended. An analysis of the third reading of the bill as amended on August 18, 2005, notes specifically that the 'seeks and agrees to construct' language that was added back to the bill on June 21, 2005 'was intended to clarify that these density bonus requirements only apply when either: 1) a local government does not have an inclusionary housing ordinance or 2) an applicant proposes to include affordable units over and above those required by a locally adopted ordinance. That amendment was adopted by the Assembly Housing Committee to clarify that issue.' [¶] Contrarily, a Senate floor analysis prepared on August 22, 2005, states that the Assembly amendment reinserting the 'seeks and agrees to construct' language 'means that any affordable housing units in a development count toward meeting density bonus requirements, regardless of whether or not affordable units are required to be constructed by the local government pursuant to a local ordinance.' However, another Senate floor analysis, prepared by apparently the same person 7 days later, deletes the foregoing interpretation from the analysis. It also includes the following argument by the author of the bill in support of it: [¶] 'When AB 435 was heard in the Assembly Housing and Community Development Committee the bill was amended in order to not place the bill at risk. One of the amendments restored the law pertaining to subdivision (b)(1). This subdivision relates to whether an applicant "agrees" to construct affordable units. My statement before the committee concerning the amendment was: ". . . A handful of local jurisdictions have argued since 1979 that the density bonus law does not apply until inclusionary requirements have been met. The vast majority of cities, counties and experts take the opposite view, as do I. By adding back language that has been the law since 1979 [the 'seeks and agrees to construct'], we will enable this handful of jurisdictions to continue to make their strained argument, but that is not troubling because the language has consistently been interpreted for 25 years by the vast majority of cities, counties and experts to mean that inclusionary requirements count toward meeting density bonus requirements.' "

We conclude that the interpretation of "the vast majority of cities, counties and experts" correctly reflects the plain meaning of the statutory language. The county's ordinance, which fails to credit low-cost units satisfying the county's inclusionary requirement toward satisfying the density bonus requirements, fails to comply with the state law. To the extent the ordinance requires a developer to dedicate a larger percentage of its units to affordable housing than required by section 65915, the ordinance is void. (*Friends of Lagoon Valley v. City of Vacaville, supra*, 154 Cal.App.4th at p. 830 [An otherwise valid local ordinance that conflicts with the state density bonus law is preempted.]; *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534] [" 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' "].)

The county suggests that if the ordinance is otherwise invalid, the ordinance is "saved" by the provision in Napa County Municipal Code section 18.107.190 that states, "If any section of this chapter conflicts with Government Code Section 65915 or other applicable state law, state law shall supersede this chapter." It argues, "if application of the ordinance to any specific development proposal conflicts with the state Density Bonus Law, the county may not enforce it" and·"[f]or this reason alone, this court may affirm the judgment."

■ The county relies on *Shea Homes Limited Partnership v. County of Alameda* (2003) 110 Cal.App.4th 1246, 1265–1266 [2 Cal.Rptr.3d 739]. In that case, the court rejected a claim that a local agriculture and open space measure adopted by popular vote conflicted with the state density bonus law. The court reasoned that while the challenged measure required the county to meet its state-imposed housing obligations in a particular portion of the county, it also "specifically states that none of its provisions shall be applied so as to preclude the County's compliance with state law housing obligations" and the measure included two mechanisms to ensure compliance with those housing obligations if the restrictions adopted by the measure should prevent it. (*Id.* at pp. 1265–1266.) The "savings" provision included in the county's ordinance in the present case, however, does no more than state the truism that state law prevails over conflicting local law. Napa County Municipal Code section 18.107.190 does not modify any particular provision of the local ordinance nor does it identify any provision of state law that controls under any particular circumstances. ■ Persons reading the ordinance without the benefit of a legal opinion as to the extent of its validity would understand that units satisfying the inclusionary requirement do not count towards the number of units necessary to qualify for the density bonus. Since that requirement does violate the statute, a writ of mandate should be issued to require its removal from the ordinance.

### III. Housing Discrimination*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### DISPOSITION

The judgment is reversed insofar as it finds in favor of the county on plaintiff's second cause of action to compel the county to comply with the state density bonus law but is affirmed in all other respects. The matter is remanded to the trial court for entry of a writ of mandate consistent with this opinion. The parties shall bear their respective costs on appeal.

Siggins, J., and Jenkins, J., concurred.

**SIGGINS, J.,** Concurring.—I fully concur in the decision of the court. I write separately to express my view that a civil action and subsequent appeal, even with calendar preference, will rarely provide an efficacious remedy to address a deficiency in the general planning process.

Work began to update Napa County's (the county) housing element in January 2008, and it was adopted by the board of supervisors that June. This lawsuit was filed in November 2009. The trial court issued its statement of decision and ruled against plaintiffs on February 1, 2012. The briefing was complete in this court at the end of February 2013. The housing element is to next be revised and updated by June 2015. Thus, we are well into the planning period for the next update.

Against this backdrop, we are to consider whether a challenged plan actually complies in substance with every reasonable objective of the general plan statute. (*Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 348 [176 Cal.Rptr. 620].) If it does not, we may reject it and the county has 120 days to effectuate a compliant plan. (Gov. Code, § 65754.)

In a case like this one where the challengers point to no alternative that would readily fulfill the objectives of the statute, and none is readily apparent in the record, judicial rejection of the plan will only create more uncertainty. Here, I urge the county to carefully consider during this planning period the reservations expressed in Justice Pollak's majority opinion of the feasibility of the selected sites, particularly Napa Pipe.

---

*See footnote, *ante*, page 1160.

The housing element law (Gov. Code, § 65580 et seq.) was intended to facilitate and expedite the construction of affordable housing (Gov. Code, § 65582.1). It is hard to discern the fulfillment of that statutory objective when repeatedly the housing envisioned in adopted plans exists only in concept on paper.

Appellants' petition for review by the Supreme Court was denied October 16, 2013, S212740.