Filed 9/28/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SCOTT SCHREIBER et al., | 2d Civil No. B303642 |
| Plaintiffs and Appellants, | (Super. Ct. No. BS173256) (Los Angeles County) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent; | |
| KIWI NEMAN et al., | |
| Real Parties in Interest and Respondents. | |

The density bonus law (Gov. Code, § 65915)[1] requires that cities and counties allow increased building density, and grant concessions and waivers of permit requirements, in exchange for an applicant's agreement to dedicate a specified number of dwelling units to low income or very low income households. Here we hold that neither the statute nor the Los

---

[1] Undesignated statutory references are to the Government Code.

Angeles City ordinance implementing it requires the applicant to provide financial documentation to prove that the requested concessions will render the development "economically feasible."

Appellants Scott Schreiber and Jessica Sabbah-Mani appeal denial of a petition for writ of administrative mandamus challenging the City of Los Angeles's approval of a development project. Appellants contend: (1) the city abused its discretion when it approved incentives and waivers without obtaining the required financial documentation, and (2) the city's approval of the project was not supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Kiwi Neman and 488 San Vicente LLC (Neman) proposed a mixed-use development in the city of Los Angeles. Retail space and a residential lobby were planned for the ground floor and residential units above. Appellants reside in a single-family home nearby.

Existing zoning requirements would limit the building to three stories, a height of 45 feet in the front and 33 feet in the back, a total of 40 units, and a maximum floor area of 21,705 square feet (floor area ratio [FAR] of 1.5:1). Neman initially applied to build 53 units including five very low income units. The proposed building was 75 feet tall in seven stories, and 60,388 square feet of floor area (FAR 4.2:1). The proposal was modified in October 2017 to build 54 units including five very low income units, five moderate income units, and 59,403 square feet of floor area (FAR 4.1:1).

The original application included a Financial Feasibility Analysis prepared by RSG, Inc. ("RSG analysis"). It included estimated development costs, net operating income, and

2

financial feasibility.  It calculated the cost per unit as $1,106,847 without the requested incentives, and $487,857 with the incentives.

A January 2017 memorandum from the Department of City Planning to staff and the public discussed recent amendments to the density law, including Assembly Bill No. 2501 (2015-2016 Reg. Sess.) (Stats. 2016, ch. 758, § 1, eff. Jan. 1, 2017) ("A.B. 2501").  The memorandum stated:  "The ability of a local jurisdiction to require special studies is eliminated unless they meet the provisions of state law.  [¶]  *Financial pro-formas and third party reviews will no longer be required . . . .*"[2]  In response, Neman advised the city he would "not be moving forward with a pro forma [for] this project."

At the City Planning Commission (CPC) hearing, a city planner stated that as a result of A.B. 2501, "financial pro formas, or financial analyses can no longer be considered as part of the density-bonus application."  A commissioner thanked her for the "[h]elpful clarification."

Following the hearing, the CPC approved the project including the requested density bonus.  It also approved two "off menu" incentives (increased floor area and maximum height), and two waivers (transitional height and rear yard setback requirements).  The CPC found:  "The record does not contain substantial evidence that would allow the City Planning Commission to make a finding that the requested Off-Menu waivers and modifications do not result in identifiable and actual

_____

[2] Pro forma balance sheets and income statements are financial projections based on expected revenues and costs. (*Herman & MacLean v. Huddleston* (1983) 459 U.S. 375, 378, fn. 3; see § 57606, subd. (a)(4).)

3

cost reduction to provide for affordable housing costs per State Law." It further found, "Granting of the off-menu requests would result in a building design or construction efficiencies that provide for affordable housing costs. The off-menu requests allow the developer to expand the building envelope so that additional affordable units can be constructed . . . . These incentives support the applicant's decision to set aside five dwelling units for Very Low Income households for 55 years as well as provide an additional five units for Moderate Income households."

Appellants filed a petition for writ of administrative mandamus. They alleged the CPC misinterpreted the density bonus law, and its findings were not supported by the evidence. (Code Civ. Proc., § 1094.5.) The trial court denied the petition.

**DISCUSSION**

We independently review questions of statutory interpretation. (*Hartnett v. San Diego County Office of Education* (2017) 18 Cal.App.5th 510, 517.) The density bonus law "shall be interpreted liberally in favor of producing the maximum number of total housing units." (§ 65915, subd. (r).)

In reviewing an administrative determination, the trial court determines whether the agency "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).) "An appellate court independently determines whether the agency prejudicially abused its discretion by failing to proceed in the manner required by law, such as by failing to comply with

4

required procedures, applying an incorrect legal standard, or committing some other error of law." (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 99.)

### *Density bonus law*

The density bonus law requires that cities and counties allow increased building density for development projects that dedicate at least ten percent of the dwelling units to low income households, or at least five percent to very low income households, for a period of 55 years or longer. (§ 65915, subds. (b), (c)(1)(A).) The amount of density increase is based on the percentage of low or very low income units. (§ 65915, subd. (f).) Section 65915 also requires that the city or county grant incentives or concessions (subds. (d), (k)) and waivers or reductions of development standards (subds. (e), (o)(1)). As required by subdivision (a)(1) of section 65915, the city adopted an ordinance to implement the statute. (Los Angeles Municipal Code (LAMC), section 12.22.A.25 ("the ordinance").)

Appellants do not contend that the city erred in granting the *density bonus*. The city was required to grant it because the developer agreed to dedicate the required percentage of units to affordable housing. (*Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 825.) Section 65915 does not require an applicant to provide financial information to support an application for a density bonus.

Appellants instead contend that section 65915 requires that applicants submit certain financial information to support a request for *incentives* and *waivers*. We conclude that the city's ordinance, which requires an applicant to submit information to show the incentives are needed to make the project "*economically feasible,*" conflicts with the statute and is

5

preempted.

### *Financial requirement for incentives*

"Concession" and "incentive" are synonymous in the statute. (§ 65915, subd. (k).) As defined, they include "[a] reduction in site development standards or a modification of zoning code requirements or architectural design requirements . . . that results in *identifiable and actual cost reductions, to provide for affordable housing costs*." (§ 65915, subd. (k)(1), italics added.)

The applicant, however, is not required to establish that cost reductions will result. Instead, "[t]he city . . . shall bear the burden of proof for the denial of a requested concession or incentive." (§ 65915, subd. (d)(4).) Subdivision (d)(1) provides that the city "shall grant the concession or incentive requested by the applicant unless the city . . . makes a written finding, based upon substantial evidence, of any of the following:

"(A) The concession or incentive does not result in identifiable and actual cost reductions, consistent with subdivision (k), to provide for affordable housing costs . . . .

"(B) The concession or incentive would have a specific, adverse impact . . . upon public health and safety or the physical environment or on any real property that is listed in the California Register of Historical Resources . . . .

"(C) The concession or incentive would be contrary to state or federal law."

The ordinance includes a parallel provision requiring approval of incentives *unless* the city finds exception (A) or (B), above. (LAMC, § 12.22.A.25(g)(2)(i)c.) It provides a "Menu of Incentives" available to developers. (LAMC, § 12.22.A.25(f).) It also permits "off-menu" incentives, with a more stringent

6

application process than menu incentives.  (LAMC, § 12.22.A.25 (g)(3).)

By requiring the city to grant incentives *unless* it makes particular findings, the statute places the burden of proof on the city to overcome the presumption that incentives will result in cost reductions.  (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 238-239 [presumption that covenants and restrictions enforceable unless unreasonable]; *In re Shannon M.* (2013) 221 Cal.App.4th 282, 290 [presumption that juvenile jurisdiction shall terminate unless particular conditions exist].)  Accordingly, Neman was not required to show, and the city was not required to affirmatively find, that the incentives would actually result in cost reductions.

### *Waivers*

Waivers or reductions of development standards are provided for in subdivision (e)(1) of section 65915:  "In no case may a city . . . apply any development standard that will have the effect of physically precluding the construction of a development meeting the criteria of subdivision (b) at the densities or with the concessions or incentives permitted by this section."  "Development standard" is defined as "a site or construction condition, including, but not limited to, a height limitation, [or] a setback requirement . . . ."  (§ 65915, subd. (o)(1).)  The city may refuse the waiver or reduction only "if the waiver or reduction would have a specific, adverse impact . . . upon health, safety, or the physical environment," would have "an adverse impact" on an historic resource, or "would be contrary to state or federal law."  (§ 65915, subd. (e)(1).)  Subdivision (e) imposes no financial criteria for granting a waiver.

7

### *Financial information requirement*

A.B. 2501 amended section 65915 to limit the documentation that can be required by a local government. It provides:

"A local government shall not condition the submission, review, or approval of an application pursuant to this chapter on the preparation of an *additional report or study that is not otherwise required by state law*, including this section. This subdivision does *not prohibit* a local government from requiring an applicant to provide *reasonable documentation to establish eligibility* for a requested density bonus, incentives or concessions, as described in subdivision (d), [or] waivers or reductions of development standards, as described in subdivision (e) . . . ." (§ 65915, subd. (a)(2), italics added.)

A.B. 2501 similarly amended subdivision (j)(1) of section 65915 to provide:

"The granting of a concession or incentive shall not require or be interpreted, in and of itself, to require a general plan amendment, local coastal plan amendment, zoning change, *study*, or other discretionary approval. For purposes of this subdivision, 'study' does not include *reasonable documentation to establish eligibility for the concession or incentive* or to demonstrate that the incentive or concession *meets the definition set forth in subdivision (k).* This provision is declaratory of existing law." (Italics added.)

A city or county is not prohibited from requesting or considering information relevant to cost reductions. Subdivisions (a)(2) and (j)(1) neither mandate nor prohibit the city from requiring that the applicant provide "reasonable documentation" regarding *cost reductions*. But the city's ordinance provides that

8

a request for an off-menu incentive "shall include *a pro forma or other documentation* to show that the waiver or modification of any development standard(s) are needed in order to make the Restricted Affordable Units *economically feasible*." (LAMC, § 12.22.A.25(g)(3)(i)a, italics added.)

A showing that an incentive is needed to make the project "economically feasible" relates to the overall economic viability of the project and is not the same as showing the incentive will result in "cost reductions." The city may not require information that an incentive is necessary to make the project "economically feasible" because that information does not "establish eligibility for the concession or incentive or . . . demonstrate that the incentive or concession meets the definition set forth in subdivision (k)." (§ 65915, subd. (j)(1).)

The "economically feasible" language in the ordinance is based on a former version of the statute, which provided: "The applicant shall show that the waiver or modification is necessary to make the housing units *economically feasible*." (§ 65915, former subd. (f), italics added.) This requirement was deleted in 2008. (Stats. 2008, ch. 454, § 1; *Wollmer v. City of Berkeley* (2011) 193 Cal.App.4th 1329, 1346.) "[I]t is clear that one of the effects of the 2008 amendments is to delete the requirement that an applicant for a waiver of development standards must show that the waiver was necessary to render the project economically feasible." (*Wollmer*, at p. 1346.)

A local ordinance is preempted if it conflicts with the density bonus law by increasing the requirements to obtain its benefits. (*Latinos Unidos Del Valle de Napa y Solano v. County of Napa* (2013) 217 Cal.App.4th 1160, 1169 [voiding ordinance requiring larger percentage of affordable housing than provided

9

in § 65915].)  The ordinance here does so; it conflicts with the state density bonus law to the extent that it requires an applicant demonstrate that an incentive is needed to make the project "economically feasible."  It is therefore preempted by state law.[3]

### Substantial evidence

Appellants contend the CPC's determination is invalid because it is not supported by substantial evidence.  We disagree.

We review the entire administrative record to determine whether substantial evidence supports the trial court's decision.  (*Pasadena Unified School Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 314; *Walnut Acres Neighborhood Assn. v. City of Los Angeles* (2015) 235 Cal.App.4th 1303, 1312-1313 [administrative mandamus by neighbor challenging zoning variance].)  "'We "'do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the [agency's] decision.  Its findings come before us "with a strong presumption as to their correctness and regularity."  [Citation.]'"  [Citation.]  When more than one inference can be reasonably deduced from the facts, we cannot substitute our own deductions for that of the agency.  [Citation.]  We may reverse an agency's

_____

[3] Appellants rely in part on a provision that requires the city to notify applicants whether they have "provided adequate information for the local government to make a determination as to [requested] incentives, concessions, or waivers or reductions of development standards."  (§ 65915, subd. (a)(3)(D)(i)(III).)  This provision does not apply because it was not effective until January 1, 2019, after the city approved the project.  (Stats. 2018, ch. 937, § 1.3.)  Moreover, it does not specify whether financial data is included as part of the "adequate information" needed to support a concession or waiver.

10

decision only if, based on the evidence before it, a reasonable person could not have reached such decision. [Citations.]'" (*Poncio v. Department of Resources Recycling & Recovery* (2019) 34 Cal.App.5th 663, 669.)

In administrative mandamus proceedings, "[a]ll or part of the record of the proceedings before the inferior . . . board . . . may be filed." (Code Civ. Proc., § 1094.5, subd. (a).) "The trial court presumes that an agency's decision is supported by substantial evidence; it is the petitioner's burden to demonstrate the contrary." (*Wollmer v. City of Berkeley, supra,* 193 Cal.App.4th at p. 1338.) Appellants have not met their burden.

The city did not make a finding that the incentives would not result in cost reductions, and was not required to substantiate this negative finding with evidence. But even if substantial evidence regarding cost reductions was required, the RSG analysis was sufficient for this purpose.

The RSG analysis reviewed cost and other financial information that supported its conclusion that the incentives resulted in "identifiable and actual cost reductions." (§ 65915, subd. (k)(1).) And an attachment to the application from Elizabeth Peterson Group, Inc., explained how public health and safety or historic resources would not be adversely affected. The trial court properly concluded that the CPC findings were supported by substantial evidence in light of the whole record.

Appellants challenge RSG's assumptions as to how many units would be built without the requested concessions. But it is not our function to reweigh the evidence. The RSG analysis constitutes substantial evidence upon which a reasonable trier of fact could conclude that the incentives would result in cost savings. (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

11

The comments at the CPC meeting do not establish that city staff or the CPC did not consider the RSG analysis. Moreover, it is not necessary to establish that the CPC relied on the document. We review the entire administrative record for substantial evidence, including documents "not directly introduced or discussed at the administrative hearing nor specifically referenced in the final statement of decision." (*Malaga County Water Dist. v. State Water Resources Control Bd.* (2020) 58 Cal.App.5th 447, 480.)

Appellants contend that the RSG analysis did not contain firsthand information about the developer's costs or finances. An expert may rely on hearsay evidence that "'provide[s] a reasonable basis for the particular opinion offered.'" (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1115.) The fact that RSG was a paid consultant did not preclude the court from considering its conclusions. (*San Franciscans Upholding the Downtown Plan v. City & County of San Francisco* (2002) 102 Cal.App.4th 656, 684.)

Appellants' reliance on *McMillan v. American General Finance Corp.* (1976) 60 Cal.App.3d 175, 181, fn. 6, and *Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 894, is misplaced. In those cases, the trial courts improperly considered evidence that was not before the involved city councils. (*McMillan*, at p. 186; *Porterville*, at p. 893.) But the RSG evaluation was part of Neman's application to the city and was part of the record before the CPC.

Finally, appellants contend that the CPC's order is deficient because it did not "set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or

12

order . . . [b]y focusing . . . upon the relationships between evidence and findings and between findings and ultimate action." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 515.)  But the CPC was required to grant the incentives *unless* it made a finding that they did not result in cost reductions.  It did not make such a finding.  It was not required to make an affirmative finding that the incentives would result in cost reductions, or to cite evidence to establish a fact presumed to be true.

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.


We concur:



YEGAN, Acting P. J.



PERREN, J.



13

Mitchell L. Beckloff, Judge

Superior Court County of Los Angeles

_____

Wolf, Rifkin, Shapiro, Schulman & Rabkin, Marc E. Rohatiner and Johnny White for Plaintiffs and Appellants.

Best Best & Krieger, Alisha Winterswyk, John Cotti; Michael N. Feuer, City Attorney, Terry P. Kaufmann Macias, Assistant City Attorney, Amy Brothers and Yongdan Li, Deputy City Attorneys, for Defendant and Respondent City of Los Angeles.

Glaser Weil Fink Howard Avchen & Shapiro, Elisa L. Paster and Elizabeth G. Chilton for Real Parties in Interest and Respondents Kiwi Neman and 488 San Vicente LLC.