TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 24-501 |
| of | : | |
| | : | April 2, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| CATHERINE BIDART | : | |
| Deputy Attorney General | : | |

The HONORABLE MONIQUE LIMÓN, MEMBER OF THE STATE SENATE, has requested an opinion on a question relating to affordable housing.

**QUESTION PRESENTED AND CONCLUSION**

The Density Bonus Law, codified at Government Code sections 65915-65918, seeks to incentivize real estate developers to build affordable housing for rental or sale at below-market prices for households with qualifying incomes. It does so by allowing developers who include a specified amount of affordable housing units in their developments to build more housing units—referred to as "density-bonus units" or "bonus units"—than would otherwise be permitted by local regulations that limit building density. While nothing in the Density Bonus Law requires the density-bonus units to themselves qualify as affordable, may a city or county nevertheless impose its own affordable housing requirements on such units?

No. A city or county may not impose affordable housing requirements on density-bonus units that are awarded under the Density Bonus Law because it would impermissibly conflict with the state law formula for calculating how many density-bonus units are awarded per affordable unit under state law. Because of this conflict, the state Density Bonus Law would preempt the contemplated local legislation. A city or county may, however, award its own density-bonus units *in addition to* those awarded

1

under the Density Bonus Law and may impose affordable housing requirements on those additional units.

## BACKGROUND

In 1979, the Legislature enacted the Density Bonus Law "to address the shortage of affordable housing in California."[1] Since then, the Law has been amended dozens of times, but its goal of providing more affordable housing remains unchanged.[2] To understand this law and the question before us, it is helpful to have some familiarity with the concepts of density and affordable housing.

"Density" refers to how many units of housing may be built on a property. "Affordable" housing as relevant here refers to housing that is mandated to be restricted for rent or sale below the market rate and is restricted to households with an income at or below certain thresholds. A preliminary step in building affordable housing is obtaining necessary permits from the governing city or county. Through local regulation such as zoning ordinances and general plans, cities and counties regulate and limit the number— that is, the density—of housing units that may lawfully be built on a given property.

Indeed, state law requires each city and county to adopt a "long-term general plan" for development and requires the plan to include density standards regulating how many units may be built on a parcel of property within the city or county.[3] Density standards

---

[1] *Latinos Unidos Del Valle De Napa Y Solano v. County of Napa* (2013) 217 Cal.App.4th 1160, 1164 (*Latinos Unidos*); Stats. 1979, ch. 1207, § 10, p. 4748, eff. Oct. 2, 1979. The Density Bonus Law is located within the Planning and Zoning Law. (Gov. Code, §§ 65000-66499.58; *Wollmer v. City of Berkeley* (2009) 179 Cal.App.4th 933, 940-941.)

[2] The Legislature has also since enacted other legislation with the goal of more affordable housing in our state, including legislation sponsored by the Attorney General. (See, e.g., Stats. 2024, ch. 268 (enacting Assembly Bill 1893 to amend Housing Accountability Act provisions relating to so-called "Builder's Remedy" that requires approval of certain affordable-housing projects); Assem. Com. on Housing and Community Development, Assem. Floor Analysis of Assem. Bill no. 1893 (2023-2024 Reg. Sess.), as amended Aug. 23, 2024, p. 4 (referring to Attorney General as sponsor); see also Stats. 2024, ch. 293 (enacting Senate Bill 1037 to create new related remedies), Senate Rules Committee, Floor Analysis of Sen. Bill no. 1037 (2023-2024 Reg. Sess.), as amended Aug. 23, 2024, p. 8 (referring to Attorney General as source).)

[3] *Friends of Lagoon Valley v. City of Vacaville* (2007) 154 Cal.App.4th 807, 815 (*Friends of Lagoon Valley*), citing Gov. Code, § 65300; see also Gov. Code, § 65302 ("general plan shall consist of a statement of development policies and shall include a diagram or diagrams and text setting forth objectives, principles, standards, and plan proposals").

24-501

may vary within a city or county; some areas may be designated as allowing (or "zoned") for high or medium density, and others for low density.

The Density Bonus Law overrides these local limits on density. The Law's aim is to incentivize housing developers to build affordable housing.[4] If a developer includes a certain percentage of affordable housing in a proposed residential development, the developer may build more units on the property than a city's or county's local regulations would otherwise allow.[5] In other words, a developer who agrees to build a certain percentage of affordable housing is rewarded under the Density Bonus Law with permission to build more residences than would otherwise be permitted by local law.[6] The developer thus receives a "bonus" increase in the number, or density, of units they are allowed to build on the property (hence, the Density Bonus Law).[7]

Nothing in the Density Bonus Law requires the bonus units themselves to qualify as affordable, i.e., below-market.[8] Instead, the bonus units, priced at a market rate, are intended to help offset the cost to the developer of building the required percentage of

---

[4] Gov. Code, § 65915, subd. (u); *Friends of Lagoon Valley*, *supra*, 154 Cal.App.4th at p. 824; *Bankers Hill 150 v. City of San Diego* (2022) 74 Cal.App.5th 755, 763.

[5] Gov. Code, § 65915, subds. (a), (b), (f); *Friends of Lagoon Valley*, *supra*, 154 Cal.App.4th at p. 824; see Gov. Code, § 65915, subd. (h)(4)(i) (defining housing development as one including at least five residential units).

[6] *Friends of Lagoon Valley*, *supra*, 154 Cal.App.4th at p. 824 ("Although application of the statute can be complicated, its aim is fairly simple: When a developer agrees to construct a certain percentage of the units in a housing development for low or very low income households . . . , the city or county must grant the developer one or more itemized concessions and a 'density bonus,' which allows the developer to increase the density of the development by a certain percentage above the maximum allowable limit under local zoning law").

[7] See *ibid.*; Gov. Code, § 65915, subds. (a), (b), (f). In addition to a density bonus, a developer may elect to receive what are referred to as incentives or concessions, which may include, for example, waivers or reductions in development standards, such as setbacks or parking ratios that would otherwise be required. (Gov. Code, § 65915, subds. (a)(3)(D)(i)(lll), (b), (d), (k).) A developer may receive similar incentives or concessions for developments that include housing for seniors, transitional foster youth, veterans with disabilities, or persons experiencing homelessness, or that include child-care facilities. (*Id.*, § 65915, subds. (b)(1)(C) & (E), (h).)

[8] See Gov. Code, § 65915, subd. (b)(1) (requiring density bonus when developer proposes certain percentage of affordable units "excluding any units permitted by the density bonus awarded pursuant to this section").

3

below-market, affordable units.[9]  Rather than seeking "additional public subsidy" from the taxpayer, the Density Bonus Law uses regulatory incentives to encourage developers to build more affordable housing.[10]

If a proposed development meets the requirements of the Density Bonus Law, the city or county is required to award a density bonus.[11]  In general, the density bonus grows larger as more affordable housing is included in the project, both in quantity (number of units) and degree of affordability (low income or very low income, typically measured as 80% and 50%, respectively, of a county's median family income).[12]  For example,

---

[9] Gov. Code, §§ 65915, subd. (u) (finding and declaring intent "to allow public entities to reduce or even eliminate subsidies for a particular project by allowing a developer to include more total units in a project than would otherwise be allowed by the local zoning ordinance in exchange for affordable units"), 65917 ("In enacting this chapter it is the intent of the Legislature that the density bonus or other incentives offered by the city, county, or city and county pursuant to this chapter shall contribute significantly to the economic feasibility of lower income housing in proposed housing developments. . . ."); cf. *id*., § 65915, subd. (d)(1) (identifying lack of cost savings for developer as reason city or county may deny developer's requested concession or incentive).

[10] Gov. Code, § 65915, subd. (u) (finding and declaring intent to reduce or eliminate public subsidy and "cover at least some of the financing gap of affordable housing with regulatory incentives, rather than additional public subsidy").

[11] *Latinos Unidos*, *supra*, 217 Cal.App.4th at p. 1167 ("section 65915 imposes a clear and unambiguous mandatory duty on municipalities to award a density bonus when a developer agrees to dedicate a certain percentage of the overall units in a development to affordable housing"); Gov. Code, § 65915, subd. (b) ("A city, county, or city and county *shall* grant one density bonus . . .," emphasis added), *id*., § 14 ("'[s]hall' is mandatory"), *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 (when interpreting statutes, presumption is "shall" is mandatory).

[12] Gov. Code, § 65915, subd. (f); *Bankers Hill 150 v. City of San Diego*, *supra*, 74 Cal.App.5th at pp. 755, 770 ("Subdivision (f) of section 65915 includes tables that prescribe a density bonus percentage, which progressively increases as a developer agrees to add a greater percentage of affordable units in the Project. The higher the percentage of affordable units, the higher the percentage of the density bonus allowing a developer to exceed the zoned density"); see Gov. Code, § 65915, subd. (b)(1)(A) & (B) (defining "lower income" and "very low income" with reference to Health and Safety Code sections that adopt definitions in "Section 8 of the United States Housing Act of 1937," Title 42 of the United States Code, section 1437 et seq.); Megan Kirkeby, Deputy Director of the California Department of Housing and Community Development, mem.

(continued…)

including 10% low-income units yields a 20% density bonus, while 24% low-income units yields a 50% density bonus.[13]  Five percent very-low-income units yields a 20% bonus, while 15% very-low-income units yields a 50% density bonus.[14]

## ANALYSIS

We are asked if a city or county may impose affordability requirements on the bonus units that are awarded under the Density Bonus Law.  Specifically, when a developer has included the requisite percentage of affordable housing units in a proposed project to qualify for a density bonus under the Density Bonus Law, may a city or county require the resulting bonus units to be affordable?  In short, the answer is no.

The question posed raises an issue of preemption.  The Density Bonus Law governs all cities and counties.[15]  The California Constitution provides that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."[16]  But a local ordinance that conflicts with the Density Bonus Law is invalid.[17]  As the Court of Appeal has recognized, local requirements are preempted by the Density Bonus Law when they increase what a developer must do to obtain its benefits.[18]

As a preliminary matter, cities and counties may, and often do, require new proposed housing developments to include a certain amount of affordable housing.[19]  The

---

to Interested Parties, May 9, 2024 (describing and setting forth Section 8 levels for low income and very low income), pp. 1-2, 6-14 available at https://www.hcd.ca.gov/sites/default/files/docs/grants-and-funding/income-limits-2024.pdf (as of April 2, 2025).

[13] Gov. Code, § 65915, subd. (f)(1).

[14] *Id*., subd. (f)(2).

[15] Gov. Code, §§ 65915, subd. (a) ("When an applicant seeks a density bonus for a housing development within, or for the donation of land for housing within, the jurisdiction of a city, county, or city and county, that local government shall comply with this section. . . ."), 65918 (Density Bonus Law applies to charter cities).

[16] Cal. Const., art. XI, § 7.

[17] *Ibid*.; *Latinos Unidos*, *supra*, 217 Cal.App.4th at p. 1169.

[18] *Schreiber v. City of Los Angeles* (2021) 69 Cal.App.5th 549, 558 ("A local ordinance is preempted if it conflicts with the density bonus law by increasing the requirements to obtain its benefits"); *Latinos Unidos*, *supra*, 217 Cal.App.4th at p. 1169 ("To the extent the ordinance requires a developer to dedicate a larger percentage of its units to affordable housing than required by section 65915, the ordinance is void").

[19] *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 441.

5

Density Bonus Law contemplates as much, and counts those affordable units required by a city or county as affordable units proposed by a developer in determining the number of bonus units that must be awarded.[20]  But the Density Bonus Law does *not* provide that bonus units awarded pursuant to the Law must be affordable—instead, those bonus units are an incentive and a reward for including affordable units within the development.[21]

The question we must answer is whether imposing a local affordability requirement on the bonus units themselves would conflict with the Density Bonus Law. We conclude that it would conflict with the Density Bonus Law by requiring the developer to include more affordable units than the formula adopted by the Legislature requires.  To encourage the construction of affordable housing, the Legislature has developed a formula in which a certain amount of proposed affordable units yields a certain amount of bonus units that would not otherwise be permitted by a city or county due to local density limits.[22]  Put more simply, the amount of affordable units the developer initially proposes determines the amount of bonus units received.  And, the amount of affordable units (pre-density bonus units) includes whatever amount a city or county may require to be affordable in proposed developments.[23]  In contrast, the state law does not provide that local affordability requirements apply to the bonus units awarded—rather, the bonus units are the incentive and reward for including affordable units to begin with, and presumably help offset the cost of building those affordable units.[24]  It has been suggested that nothing expressly prohibits applying local affordability requirements to the bonus units.  But the express directive in the Law to apply such local requirements in counting the number of affordable units to pre-density-bonus units strongly implies that they apply there alone.[25]  The same implication arises from the

---

[20] See fn. 23, *post*, and corresponding text in the body.

[21] See *ante*, fns. 4-7 and corresponding text in the body.

[22] Gov. Code, § 65915, subds. (b), (f).

[23] Gov. Code, § 65915, subd. (*o*)(9)(A)(ii) (expressly stating that "total units" counting towards density bonus include units "designated to satisfy an inclusionary zoning requirement"); see *id*. subds. (b) ("total units" counting towards density bonus exclude density-bonus units), (f) (setting forth percentages of total units with resulting percentages of density-bonus units); see also *California Building Industry Assn. v. City of San Jose*, *supra*, 61 Cal.4th at p. 441 (explaining what are known as local "inclusionary" zoning and housing ordinances to require a certain percentage of affordable housing in new developments).

[24] See *ante*, fns. 4-9, and corresponding text in the body.

[25]  See Gov. Code, § 65915, subds. (b) (requiring density bonus based on affordable

(continued…)

6

related requirement in the Law to exclude bonus units when calculating affordable units as a percentage of total units.[26]

In sum, we believe that applying local affordability requirements to bonus units would conflict with the state law formula of how many affordable units are required to receive the bonus units, contrary to the Legislature's intent. We therefore conclude that local affordability requirements may not be applied to bonus units awarded under the Density Bonus Law.

The Courts of Appeal have reached similar conclusions where a local law has diminished the benefits of the Density Bonus Law.[27] Of those decisions, the most relevant here arose under a county ordinance that required a certain percentage of affordable units in all new developments.[28] The county did not count the affordable units it required towards a density bonus under the Density Bonus Law.[29] The ordinance impermissibly required a developer to include a higher percentage of affordable units than the Density Bonus Law requires "by excluding from the target units necessary to qualify for the density bonus those units necessary to satisfy the county's inclusionary requirement."[30] The court explained that "allowing the county to increase the minimum

---

housing included in "total units" proposed "excluding any units permitted by the density bonus"), (*o*)(9)(A)(i)-(ii) (defining "total units" to count towards bonus to exclude density-bonus units, but to include units to satisfy local affordability requirements).

[26] *Ibid*.

[27] See, e.g., *Latinos Unidos*, *supra*, 217 Cal.App.4th at pp. 1165-1166, 1169 (concluding county ordinance was preempted by Density Bonus Law because it required new developments to include certain percentage of affordable housing but did not count those units in calculating density bonus under section 65915); *California Building Industry Assn. v. City of Oceanside* (1994) 27 Cal.App.4th 744, 770-771 (concluding city ordinance is preempted because it excluded from exemption to city growth limit low-income and senior housing built with a density bonus, discouraging developers from proposing such housing that would otherwise qualify for bonuses).

[28] *Latinos Unidos*, *supra*, 217 Cal.App.4th at p. 1165.

[29] *Ibid*. Since then, the Legislature has provided additional clarity on the issue—for example, expressly defining the "total units" of affordable units proposed (to count for calculating the density bonus) as including units designated to meet local affordability requirements. (See, e.g., Stats. 2021, ch. 340 (enacting Senate Bill 290 to add subdivision (*o*)(6), which is now subdivision (*o*)(9), to Government Code section 65915); see *ante*, fns. 23, 25 and corresponding text in the body (drawing upon and citing to Government Code section 65915, subdivision (*o*)(9).)

[30] *Latinos Unidos*, *supra*, 217 Cal.App.4th at pp. 1165-1166.

number of affordable units required for a density bonus would conflict with subdivision (f) of section 65915, which bases the amount of density bonus on the percentage of affordable housing units in the project."[31] The ordinance placed a "greater burden on developers than is permissible under state law."[32]

Here, if a city or county were to impose local affordability requirements on units awarded as a density bonus under section 65915, it would likewise place a greater burden on developers to obtain the bonus units than state law does. It would effectively require a developer to build a higher percentage of affordable units than section 65915 requires to obtain its benefits.

Some comments we received illustrated this greater burden on developers with examples. The clearest one involves a proposal to build 100 housing units, with 15 percent of them (i.e., 15 units) very-low-income units. The Density Bonus Law would award the developer a 50-percent density bonus; that is, the developer would be permitted to build 50 units more than local zoning rules would otherwise allow.[33] So in this example there would be a total of 150 units: 15 very-low-income units, and the 135 market-rate units (including the 50 units awarded as a bonus). If instead the development were subject to a *local* requirement that 15 percent of the *entire* resulting 150-unit development must be very-low-income units, the project would need 23 very-low-income units (rounding up) rather than 15, to receive a bonus in the same amount of 50 units.[34] The developer would have to finance and build eight more very-low-income units to get the 50-unit density bonus that the developer is otherwise entitled to receive under the state density bonus formula, thereby altering and conflicting with that formula for purposes of a preemption analysis.

Some input we received argues that the resulting increase in affordable housing units aligns with the legislative intent to create more affordable housing. Others believe that imposing local affordability requirements on bonus units awarded under the Density Bonus Law would disincentivize building affordable housing, contrary to legislative intent. It is not our role, however, to determine which approach would result in more affordable housing being built. The Legislature has determined how many affordable units to require for how much of a reward. Because a local affordability requirement on the reward would conflict with the Legislature's determination, such a requirement is preempted.

---

[31] *Id*. at pp. 1167-1168.

[32] *Id*. at p. 1166.

[33] Gov. Code, § 65915, subd. (f)(2).

[34] *Id*., § 65915, subds. (f)(5) (directing to round up), q (same).

24-501

An advocate for a contrary conclusion cites an excerpt from a Memorandum by the Department of Housing and Community Development as support for the view that local affordability requirements may apply to density-bonus units.[35] But the excerpt pertains to an entirely different statutory scheme, the Housing Element Law, and arose in the context of when affordable housing projects under that Law are "by-right" (meaning the locality must ministerially approve the project).[36] Specifically, the Memorandum presented a hypothetical "shortfall" zoning scenario, where a city failed to hit prior housing element targets—an entirely different situation from density-bonus applications, where the goal is to incentivize developers to build more affordable housing units. In that "shortfall" zoning scenario, the *entire* number of units in the development, whether it utilizes the Density Bonus Law or not, must meet a 20 percent affordability requirement to meet the by-right provisions of the Housing Element Law.[37] The Memorandum explains that to invoke the by-right provisions, 20 percent of the whole project must be affordable, and *all* units (even bonus units awarded under the Density Bonus Law) count in calculating the 20 percent. Nothing in the Memorandum, therefore, contradicts the judicial interpretations of the Density Bonus Law.

We emphasize that our conclusion does *not* preclude a city or county from imposing affordability requirements on *additional* bonus units awarded under local law, and not under the Density Bonus Law. It is conceivable that a city or county could award *more* bonus units than the state law requires as a means of increasing the number of units in the development—including affordable ones. Indeed, the Density Bonus Law expressly allows as much and specifies that such additional bonus units granted by a locality are not counted in the state formula in determining a bonus.[38] Also, the Court of

---

[35] See Department of Housing and Community Development Memorandum from Megan Kirkeby, Acting Deputy Director of the Division of Housing Policy Development, on Housing Element Site Inventory Guidebook, Government Code Section 65583.2, dated June 10, 2020, p. 38, available at https://www.hcd.ca.gov/community-development/housing-element/docs/sites_inventory_memo_final06102020.pdf (as of April 2, 2025).

[36] *Id*., pp. 1 ("The housing element of the general plan must include an inventory of land suitable and available for residential development to meet the locality's regional housing need by income level. The purpose of this Guidebook is to assist jurisdictions and interested parties with the development of the site inventory analysis" and identify recent changes in relevant laws), 39 (recent changes to Housing Element Law).

[37] See Gov. Code, § 65583.2, subd. (c).

[38] *Id*., § 65915, subds. (n) ("If permitted by local ordinance, nothing in this section shall be construed to prohibit a city, county, or city and county from granting a density bonus greater than what is described in this section for a development that meets the

(continued…)

9

24-501

Appeal has determined that a locality may do so, reasoning that a greater bonus furthered the objectives of the Law.[39]  Should a city or county ordinance offer a developer even more density as a reward, it could impose affordability requirements on those units without affecting the Density Bonus Law's formula for how many bonus units are awarded under state law.  Instead, it would leave that formula intact because the local affordability requirements would only apply to those units awarded under local law on top of what was already awarded under the state law.  As a result, there would be no preemptive conflict with the Density Bonus Law.  As explained above, however, a locality may not apply affordability requirements to the bonus units awarded under the Density Bonus Law itself because it would conflict with the formula set forth in that Law.

---

requirements of this section . . ."), (*o*)(9)(a)(1) (units used to calculate density bonus are referred to as "total units" and "[e]xclud[e] a unit added by a density bonus awarded pursuant to this section or any local law granting a greater density bonus").

[39] *Friends of Lagoon Valley*, *supra*, 154 Cal.App.4th at pp. 823-826.

24-501